1:20 MJ 9247

# AFFIDAVIT IN SUPPORT OF A

# SEARCH WARRANT

I, Azalea J. Husband, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), United States Department of Justice (DOJ), hereinafter referred to as Affiant, being duly sworn under oath, hereby depose and state as follows:

1. Your Affiant is an investigative or law enforcement officer of the United States within the meaning of Section 2510 (7), of Title 18, United States Code, as a Special Agent of the FBI.  As such, your Affiant is empowered to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. Your Affiant has been an employee with the FBI since July 2014. Your Affiant has been a SA assigned to the Cleveland Division since May 2019. During this time, your Affiant has been assigned to investigations involving a variety of violations and is currently assigned to the Northern Ohio Law Enforcement Task Force (NOLETF), a Cleveland based, multi-agency, federal, state, and local law enforcement drug task force. Your Affiant has participated in investigations targeting organizations involved in drug trafficking offenses in Northern District of Ohio and elsewhere. Prior to this, your Affiant was assigned to work complex computer crimes. Your Affiant has received specialized training at the FBI Academy, in Quantico, Virginia, in a variety of Federal criminal violations, including training on how to conduct surveillance, conduct electronic and physical searches, interview and interrogation techniques, financial investigations (including asset forfeiture and money laundering tactics), evidence collection, weapons of mass destruction, arrest and search warrants executions, and case preparations.

3. Your Affiant knows that the success of professional Drug Trafficking Organizations (DTOs) depends upon maintaining extensive contacts throughout the country. Specifically, individuals involved in drug trafficking must maintain contact with drug suppliers, drug couriers, drug customers, and others involved in the supply, transportation, distribution, sales, and marketing of controlled substances. It is essential that members of DTOs maintain contact with one another and utilize expedient means of communication. To do this, continued access to telephone communication, to include push-to-talk communication and text messaging, is necessary. The use of telephone communication and text messaging is essential in maintaining timely long-distance and local contacts with the original suppliers and those down the organizational chain, to include local traffickers. Your Affiant is aware that those involved in illegal drug operations often list their telephones and cellular telephones in the names of others or purchase pre-paid cellular telephones that do not require any proof of identification, in order to conceal their identities and illegal purposes. It is likewise essential that such organized groups meet to formulate plans concerning narcotics or other illegal activities and to divide their illegal proceeds. Through training and experience, your Affiant is aware that members of a DTO utilize cellular telephones, to include the push-to-talk, direct connect feature, and text messaging, in order to arrange such meetings with participants in the DTO.

4. Your Affiant is aware that drug traffickers maintain on hand large amounts of U.S. currency in order to maintain and finance their ongoing narcotics activities and other businesses as well as for paying bills, acquiring assets, and making other purchases.

5. Your Affiant is aware that it is common for drug traffickers to secret contraband, proceeds of drug sales, and records of drug transactions in secure locations within their

residences and vehicles, the residences and vehicles of their associates, and of family members for ready access and to conceal them from law enforcement authorities.

6. Your Affiant is aware that persons engaged in drug trafficking often conceal in their residences and vehicles, large amounts of currency, financial instruments, precious metals and gems, jewelry, and other items of value and/or proceeds of drug transactions.

7. Your Affiant is aware that persons engaged in drug trafficking often conceal in their residences and vehicles, drugs, scales, blenders, baggies, cutting agents, large amounts of cash, money counters, and other items used in preparing, packaging, selling, and transporting narcotics.

8. Your Affiant is aware that individuals involved in narcotics trafficking often maintain records linking them to their trafficking and that these records may include records of narcotics sales, debts, shipments, telephone books which identify customers and/or co-conspirators, and photographs of co-conspirators.  That even if off-site locations are used to store above records, some evidence such as safety deposit keys, records, and receipts and/or documents regarding multi-warehouses, mail and answering services will be present in the trafficker's main residence and vehicles.  Your Affiant is aware that the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

9. As a result of your Affiant's personal participation in this investigation and reports made to your Affiant by other Special Agents of the FBI, DEA, IRS, ICE, CBP and other state and local law enforcement officers, witnesses and reliable confidential sources, your Affiant is familiar with the circumstances and offenses described in this Affidavit.

**BASIS OF INFORMATION**

10. Except as otherwise noted, the information set forth in this Affidavit has been provided to your Affiant, by FBI Agents, NOLETF officers, DEA Agents, IRS Agents, CBP Agents, ICE Agents or other law enforcement officers. Unless otherwise noted, whenever in this Affidavit your Affiant asserts that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom Affiant has spoken or whose report Affiant has read and reviewed. Likewise, information resulting from surveillance, except where otherwise indicated, does not necessarily set forth Affiant's observations but rather has been provided directly or indirectly by FBI Agents, NOLETF Officers, DEA Agents, IRS Agents, CBP Agents, ICE Agents or other law enforcement officers who conducted such surveillance. Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects and record checks has been obtained through the Law Enforcement Automated Data System (LEADS), the State of Ohio or the National Crime Information Center (NCIC), the Ohio Law Enforcement Gateway (OHLEG) computer system, and other known federal and public database computer systems, by members herein described.

**RELIABILITY OF INFORMATION**

11. Since July 2020, Special Agents of the FBI and NOLETF Officers have received information concerning an illegal Drug Trafficking operation being conducted by JAMES TROUPE, aka TJ and others from a reliable confidential informant (hereinafter referred to as Source 1). Source 1 has positively identified a photograph of JAMES TROUPE, who Source 1 knows as "TJ" (hereinafter referred to as JAMES TROUPE). Source 1 has been cooperating with the FBI Cleveland since August 2020. Source 1 has previously provided

information to local law enforcement that has been used in past drug search warrants. Investigators have found Source 1's information to be truthful and accurate. Source 1's cooperation in this matter is for monetary gain. Source 1 has made consensually monitored and recorded conversations setting up a heroin/fentanyl purchases from JAMES TROUPE in support of this FBI investigation. Source 1's information concerning JAMES TROUPE has been corroborated through physical surveillance, a review of various records (such as BMV records, Lexis/Nexis, Choicepoint, OHLEG, and NCIC), consensually monitored and recorded conversations with TROUPE, and controlled drug purchases conducted by your Affiant and other NOLETF officers. For these reasons, your Affiant considers Source 1's information concerning JAMES TROUPE to be reliable[1].

## PROPERTY TO BE SEARCH

12. Your Affiant makes this Affidavit in support of an application for the issuance of a search warrant for the following residence: **1248 E 124th Street, Cleveland, Ohio**. Based on database searches and physical surveillance conducted, it is believed that the residence **1248 E 124th Street, Cleveland, Ohio** belongs to JAMES TROUPE. The residence is a tan, two story, standalone single family home with an attached garage. The address numbers "1248" are attached to a post on the porch.

## ITEMS TO BE SEIZED

See attachment B.

## BACKGROUND AND PROBABLE CAUSE

13. In July 2020, Source 1 started supplying information regarding the drug trafficking activities of JAMES TROUPE. Source 1 positively identified a photograph of TROUPE. Source 1 stated TROUPE is a large scale heroin/fentanyl dealer operating in the

area of **1248 E 124th Street, Cleveland, Ohio**. Source 1 confirmed that TROUPE's residence is located at **1248 E 124th Street, Cleveland, Ohio**. Source 1 in all activities involving TROUPE has observed TROUPE driving a Black Chevy Cobalt with Temporary Ohio Tags and a red and silver conversion van with Temporary Ohio Tags.

14. In late July 2020, Source 1 placed an outgoing call to 216-612-8774, wherein Source 1 and TROUPE had a conversation. Source 1 asked to purchase a a quantity of heroin/fentanyl.

15. On or about the week of August 3, 2020, your Affiant met with Source 1 and provided Source 1 with the heroin/fentanyl buy money and a body recorder to record the drug transaction with TROUPE. Source 1 and Source 1's vehicle was searched and was found to be free of contraband. Source 1 stated that TROUPE had recently been driving a red and silver conversion van with a temporary Ohio license plate.

16. Source 1 placed an outgoing telephone call to telephone number 216-612-8774, wherein Source 1 and JAMES TROUPE had a conversation. TROUPE and Source 1 confirmed where to meet to conduct the drug transaction.

17. Physical surveillance was initiated in and around TROUPE's residence, **1248 E 124th Street, Cleveland, Ohio**. Surveillance units observed two black sedans were parked in the driveway at TROUPE's residence. Also parked in the driveway of the residence was the aforementioned red and silver conversion van.

18. Surveillance units observed TROUPE exit his residence (1248 E 124th Street, Cleveland, Ohio), enter the red and silver conversion van, and head in the direction of the intended meet location with Source 1. Surveillance units observed TROUPE pulling up next to Source 1's vehicle and motioning for Source 1 to follow him. Source 1 proceeded to

follow TROUPE to a side street to conduct the drug transaction. Once parked, Source 1 exited vehicle and approached TROUPE's vehicle, wherein Source 1 supplied TROUPE with the heroin/fentanyl buy money and TROUPE handed over a small plastic bag containing heroin/fentanyl.

19. Moments later, surveillance units observed Source 1 and TROUPE driving away from each other. Surveillance units observed TROUPE entering a parking lot and observed another blue SUV with a red hood pull up next to TROUPE. Surveillance units observed a white female proceed to exit the blue SUV and enter TROUPE's vehicle through the front passenger door. Surveillance units observed a white female exit the vehicle a few minutes later and observed TROUPE depart the parking lot. Surveillance units continuously followed TROUPE back to his residence **1248 E 124th Street, Cleveland, Ohio**. Based on your Affiant's training and experience, it is believed that TROUPE conducted another drug transaction with the white female in the blue SUV while in the parking lot.

20. Your affiant and NOLETF officers followed Source 1 back to a previously arranged meeting location where they took possession of the heroin/fentanyl and body recorder. Source 1 and Source 1's vehicle was searched for contraband and money with negative results. The heroin/fentanyl was subsequently tested at the Cuyahoga County lab. Lab results confirmed it to be fentanyl.

21. On or about the week of August 10, 2020, your Affiant met with Source 1 to conduct a drug transaction with TROUPE. Source 1 placed an outgoing phone call to 216-612-8774, wherein Source 1 and TROUPE had a conversation. Source 1 told TROUPE he was interested in purchasing a quantity of heroin/fentanyl. In a recorded conversation, Source 1 and TROUPE agree on a time and place to meet to complete the drug transaction.

22. Surveillance units initiated surveillance in or around TROUPE's residence, **1248 E 124th Street, Cleveland, Ohio**. Surveillance units observed a Ford Fusion pull into the driveway of TROUPE's residence and a black female exit the vehicle and enter the residence. Surveillance units observed TROUPE exit the residence with the aforementioned black female and enter the Ford Fusion (female was the driver, TROUPE was the passenger). Surveillance units observed the Ford Fusion pull out of TROUPE's residence and begin heading in the direction of the meet location.

23. Source 1 received an incoming call from 216-612-8774, wherein Source 1 and TROUPE had a conversation. TROUPE instructed Source 1 on where to meet him to conduct the drug transaction. Your Affiant provided Source 1 with the heroin/fentanyl buy money and a body recorder to record the drug transaction with TROUPE. Surveillance units observed TROUPE exiting the Ford Fusion and walking up to Source 1's car. Source 1 supplied TROUPE with the heroin/fentanyl buy money and TROUPE gave Source 1 the heroin/fentanyl. Surveillance units continuously followed the Ford Fusion containing TROUPE and the black female back to his residence, **1248 E 124th Street, Cleveland, Ohio.**

24. Your affiant and NOLETF officers followed Source 1 back to a previously arranged meeting location where your Affiant took possession of the heroin/fentanyl and the body recorder.  Source 1 stated that TROUPE informed Source 1 that he would be out of town for a few days and that he was turning over his drug business and TROUPE's "dope" phone, 216-612-8774, to his "brother", aka "J", to continue to serve Source 1 with heroin/fentanyl while TROUPE was out of town. The heroin/fentanyl has been sent to the Cuyahoga County lab for processing, but the results are pending.

25.     In the later part of August 2020, your Affiant met with Source 1 to conduct a drug transaction with TROUPE's aforementioned "brother", who Source 1 knew as "J" (hereinafter referred to as "J"). Source 1 placed an outgoing call to 216-612-8774, wherein Source 1 and "J" had a conversation. Source 1 told "J" he was interested in purchasing an amount of heroin/fentanyl. "J" and Source 1 agreed on a meet location. Your Affiant provided Source 1 with the heroin/fentanyl buy money and a body recorder to record the drug transaction with "J". While en route to the meeting location, Source 1 received an incoming telephone call from 216-612-8774, wherein "J" instructed the Source where to meet to conduct the drug transaction. Surveillance units observed Source 1 arrive at the meeting location. After reviewing the body recorder, your Affiant confirmed that the individual known as "J" approached Source 1's vehicle, gave Source 1 the heroin/fentanyl, and Source 1 supplied "J" with drug buy money.

26.     Your affiant and NOLETF officers followed Source 1 back to a previously arranged meeting location where your Affiant took possession of the heroin/fentanyl and the body recorder.  The heroin/fentanyl has been sent to the Cuyahoga County lab for processing, but the results are pending.

27.     Your Affiant is requesting authority to search the above described residence **1248 E 124th Street, Cleveland, Ohio**, which your affiant believes to have evidence of drug trafficking activities.  More specifically, your Affiant submits that TROUPE has conspired to distribute and possess with intent to distribute heroin/fentanyl, in violation of Title 21, Section 846, 841(a)(1), United States Code, and Affiant submits that evidence of this crime,

more particularly described in Attachment B, will be found on the premises of **1248 E 124th**

**Street, Cleveland, Ohio**<u>, more particularly described in Attachment B.</u>

_____
Azalea J. Husband
Special Agent
Federal Bureau of Investigation

This affidavit was sworn to by the affiant by telephone after a PDF was transmitted by email, per Crim R. 41(d)(3) on this **18th** day of August, 2020.

_____
WILLIAM H. BAUGHMAN, JR.
United States Magistrate Court Judge
Northern District of Ohio